UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HARLEYSVILLE LAKE STATES INSURANCE COMPANY, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) CAUSE NO. 3:04-CV-306RM ) |
| AMOS HOSTETLER, JANICE HOSTETLER, and HEARTLAND DAIRY, | ) ) ) ) |
| Defendants | ) |

OPINION AND ORDER

This declaratory judgment action arises from a November 8, 2002 automobile collision in Lancaster, Pennsylvania involving vehicles driven by Colin Wiggins and Heartland Dairy employee Amos Hostetler, who was accompanied by his wife, Janice. Mr. Wiggins was found to be at fault, and Mrs. Hostetler suffered personal injury as a result of the collision. The Hostetlers' insurance policy had limits of $100,000 for underinsured motorist coverage. Because Mr. Wiggins carried a policy with liability coverage limits of $25,000, the Hostetlers insurance company—Goodville Mutual Insurance Company—offered $75,000 in underinsured motorist coverage.

A dispute has arisen between Harleysville Lake States Insurance and the Hostetlers as to whether Mrs. Hostetler is entitled to underinsured motorist coverage under Heartland Dairy's policy with Harleysville Lake. Both parties filed

motions for summary judgment seeking declaratory relief. For the reasons that follow, the court agrees with the Hostetlers that Mrs. Hostetler could be entitled to underinsured motorist coverage under the Heartland Dairy's policy. Given the factual dispute over Heartland Dairy's control over Mr. Hostetler's car during the trip in question, however, the court cannot say that it was "borrowed" or "hired" as a matter of law, and so cannot declare that Mrs. Hostetler is entitled to underinsured motorist coverage as an insured of Heartland Dairy's policy with Harleysville Lake. Accordingly, the court denies both motions.

## MOTION TO STRIKE

Summary judgment rulings ordinarily begin with a recitation of the facts viewed most favorably to the non-moving party, but the parties' cross motions to strike require the court to start by determining the content of the summary judgment record. Each party submitted an affidavit in support of its summary judgment, and each has moved to strike portions of the other's sworn statement.

Harleysville Lake moves to strike Mr. Hostetler's affidavit except for paragraphs 1-5 because it contends the remaining paragraphs violate Federal Rule of Civil Procedure 56(e) because they either are irrelevant or contain statements which are hearsay, mere opinions or legal conclusions.

Harleysville Lake objects to paragraphs 6, 7, 8, 9, 10, 16, 17, and 30 as mere opinions and legal conclusions. The court overrules these objections with two exceptions: (1) the objection to the statement regarding Mrs. Hostetler's understanding that she was acting on behalf of Heartland Dairy is sustained as speculative; and (2) the objection to the statement that Mrs. Hostetler's activities were controlled by Heartland Dairy and the objection to Mr. Hostetler's statements that Heartland Diary was in control of all aspects of the trip are both sustained as legal conclusions not helpful to a trier of fact. The remaining portions of paragraphs 6, 7, 8, 9, 10, 16, 17, and 30 in which Mr. Hostetler states Heartland Dairy suggested, permitted and approved his wife accompanying him on a trip on behalf of Heartland Dairy and that Heartland agreed to pay the expenses associated with the use of his personal vehicle are not legal conclusions or hearsay statements; they contain admissible statements regarding Mr. Hostetler's understanding of the circumstances of the trip. The statements are based on personal knowledge from his conversations with Mr. Swanson, are rationally based on Mr. Hostetler's perception of that conversation, and were later confirmed by Mr. Swanson's statement. *See* Federal Rule of Evidence 701. The extent to which Mr. Swanson's understanding of the trip is in conflict with Mr. Hostetler's version goes to the weight of the statement, not its admissibility.

Harleysville Lake also objects to paragraphs 11, 12, 13, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29 as containing irrelevant information about the length and location of the trip, as well as the nature of the collision and Mrs. Hostetler's

3

injuries. Harleysville Lake contends that these statements are not relevant to whether Mrs. Hostetler is covered under Heartland Dairy's policy. The court cannot agree with Harleysville Lake's contention since these paragraphs establish the nature of the trip, which is relevant to the ultimate issue: whether Mrs. Hostetler is an insured. As such, the court overrules those objections.[1]

The Hostetlers object to paragraph 12 of Mr. Swanson's affidavit, in which he says it was his understanding that the Hostetlers would be visiting family and that they would be free to stop as they desired to engage in sightseeing, shopping, or any other activity. The Hostetlers contend such a statement is speculative because it has no factual support. This objection is overruled with the exception of the second sentence. Given Mr. Swanson and Mr. Hostetler had a conversation about the subject trip, it is reasonable to infer that Mr. Swanson developed an understanding as to where the Hostetlers would be traveling; this perception is based on personal knowledge from the conversation. Whether Mr. Swanson's understanding of the trip is in conflict with Mr. Hostetler's version goes to the weight of the statement, not its admissibility. The court does not consider the second sentence, however, because it is based on speculation.

## FACTS

---

[1] Harleysville Lake also requests that the court not consider photos of the Hostetlers' vehicle or correspondences between the Hostetlers' attorney and Harleysville Lake. This motion is denied because the court needn't consider the objectionable materials in reaching its decision.

Mr. Hostetler has worked at Heartland Diary since 1992 and is employed as a service manager. His responsibilities include traveling to dealerships that do business with Heartland Dairy, which supplies, services, and installs dairy equipment. In November 2002, Mr. Swanson approached Mr. Hostetler about traveling to Ohio and Pennsylvania to visit dealerships on behalf of Heartland Dairy. Mr. Swanson suggested that Mr. Hostetler have his wife travel with him and authorized Mr. Hostetler to use his personal automobile, agreeing to pay Mr. Hostetler the expenses associated with the use of his car.

At least one purpose of the trip was to conduct business on behalf of Heartland Dairy by visiting dealerships on certain dates and times Mr. Swanson would schedule. Whether the Hostetlers were traveling in part for personal reasons is disputed, but Mr. Swanson set up at least two appointments: a tour of Hills Supply in Ohio and a tour of Wittmer's Implement in Pennsylvania, and on November 6, Mr. and Mrs. Hostetler met the owners and toured the facilities at Hills Supply in Ohio.

On Friday, November 8, 2002, Mr. Hostetler was driving his car, accompanied by his wife, en route to visit E-zee Milking Equipment along Route 30 in Lancaster, Pennsylvania. Whether Mr. Swanson or Heartland Dairy instructed Mr. Hostetler to visit the E-zee Milking Equipment dealership as part of the trip also is in dispute. Mr. Swanson says that despite his discussion with Mr. Hostetler about visiting E-zee Milk Equipment at some point, he never

5

scheduled an appointment for Mr. Hostetler to tour the E-zee Milking Equipment operation. On Route 30, Mr. Wiggins inexplicably crossed the center line of traffic, crashing into the passenger's side of Mr. Hostetler's car where Mrs. Hostetler was sitting. Mr. Wiggins was found to be at fault in the collision.

Mrs. Hostetler suffered extensive and severe injuries. Her hand was essentially severed from her wrist but was reattached through multiple surgeries. She incurred close to $100,000 in medical expenses as a result of the injuries she sustained in the accident. Mr. Wiggins' $25,000 in liability coverage through his insurance carrier (AIC) and a lack of viable assets made him underinsured to cover Mrs. Hostetler's injuries. The Hostetlers' insurance policy with Goodville Mutual Insurance Company, which had policy limits of $100,000 in Underinsured motorist coverage, less a set-off $25,000 for the AIC payment, resulted in a total of $75,000 in underinsured motorist coverage.

As of November 8, 2002, Harleysville Lake insured Heartland Dairy through a commercial automobile policy. The Hostetlers' counsel contacted Harleysville Lake and requested underinsured motorist coverage for Mrs. Hostetler under the Heartland Dairy policy.

CROSS MOTIONS FOR DECLARATORY RELIEF

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-moving is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

The existence of cross-summary judgment motions doesn't imply an absence of genuine issues of material fact: "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." R.J. Corman Derailment Servs., LLC v. International Union of Operating Engineers, Local 150, 335 F.3d 643, 647-648 (7th Cir. 2003). The court isn't required to grant summary judgment for either side when faced with cross-motions. "Rather, the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." Crespo v. Unum Life Ins. Co. of America, 294 F. Supp.2d 980, 991 (N.D. Ind. 2003) (citations omitted).

The insurance contract's terms are not in dispute; the only dispute is over the legal significance of those terms. Indiana law[2] requires insurers to provide underinsured motorist coverage to those who are insured under the liability provisions of the policy in an amount equal to the policy's bodily injury liability limits unless the insured rejects in writing the underinsured motorist coverage. IND. CODE § 27-7-5-2; American States Ins. Co. v. Braden, 625 N.E.2d 1252, 1257 (Ind. Ct. App. 1993). A policy that does not provide underinsured motorist coverage to those who are insured under the liability provisions is contrary to

---

[2] The contract was formed in Indiana and the parties base their arguments on Indiana law, so the court applies Indiana law.

8

public policy and the insured is entitled to benefits of such coverage unless expressly waived. American Family Mut. Ins. Co. v. Federated Mut. Ins. Co., 775 N.E.2d 1198, 1207 (Ind. Ct. App. 2002).

Heartland Dairy's policy provides $1,000,000 in underinsured motor coverage, but limits coverage only to those insureds whose claim relates to an auto "owned" by Heartland Dairy. Because Heartland Dairy never signed a rejection, the statute requires Harleysville Lake to provide at least $1,000,000 in underinsured motorist coverage to those who are found to be insured under the liability provisions.

An insurance policy is a contract and subject to the same rules of construction as are other contracts, Amerisure, Inc. v. Wurster Const. Co., Inc., 818 N.E.2d 998, 1001 (Ind. Ct. App. 2004), and if an insurance contract is clear and unambiguous, its language must be given its plain and ordinary meaning. Castillo v. Prudential Property and Cas. Ins. Co., 834 N.E.2d 204, 206 (Ind. Ct. App. 2005). The determination of rights and obligations under an insurance policy are questions of law for the court which are appropriate subjects for disposition by way of summary judgment. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000).

In its motion for declaratory relief, Harleysville Lake contends that Mrs. Hostetler is not an insured under the policy's liability provisions because she falls within two exclusionary provisions — Commercial General Liability Coverage

9

Section 2(e)(2) and Business Auto Coverage Section 4(b) — and because the policy definition of "hired auto" doesn't include autos hired or borrowed from a member of an employee's household.[3] The court cannot agree with Harleysville Lake's contentions.

The provisions that Harleysville Lake claims exclude Mrs. Hostetler from coverage provide:

> B. Exclusions
>
> This insurance does not apply to any of the following:
>
>> 4. Employee Indemnification and Employer's Liability
>>
>>> "Bodily Injury" to:
>>> a. An "employee" of the "insured" arising out of and in the course of:
>>>> (1) Employment by the "insured"...
>>> b. The spouse... of that "employee" as a consequence of Paragraph a.

---

[3] The Hostetlers argue that Harleysville Lake has waived these arguments – that Mrs. Hostetler is not an insured under the liability provision – because those theories were not raised in the initial complaint. The court disagrees. Harleysville Lake raises these argument in a filing entitled "Memorandum of Law Opposing Defendant's Amos and Janice Hostetlers' Motion for Summary Judgment and Plaintiff's Memorandum of Law Supporting its Cross Motion for Summary Judgment." Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Rule 8(a) does not prevent a party from making new arguments under that claim at the summary judgment stage so long as the opposing party has reasonable notice and an opportunity to respond. Multi-Ad Services, Inc. v. N.L.R.B., 255 F.3d 363, 370 (7th Cir. 2001) (parties may not raise new arguments or present new facts for the first time in reply). Moreover, Harleysville Lake has a right to respond to the Hostetlers' argument that Mrs. Hostetler is entitled to underinsured motorist coverage because she is an insured under the liability provision.

Exclusions concerning the insured's liability are inapposite to the determination of a party's entitlement to underinsured motorist coverage. Heartland Dairy's policy does not exclude underinsured motorist coverage for work-related injuries; instead, the "scope of employment" exclusion limits the insured's liability for on-the-job injuries. As such, the exclusion is inapplicable to this case.

The court also disagrees with Harleysville Lake's second argument — that the policy defines the term "hired auto" so as to exclude automobiles hired by an employee's family members.[4] Section V of the Business Auto Coverage Form sets forth the definitions for the policy's terms, and no definition exists for "hire" or "borrow". The provision upon which Harleysville Lake relies is not a definition, but rather a description of autos that correspond with the use of a particular numeric symbol. These symbols are used to designate the type of auto covered by a particular provision. The Business Auto Coverage Form, for example, designates a "1" in its declaration page which references "any auto," including those autos Heartland Dairy hires or borrows from an employee.

For these reasons, the court cannot say as a matter of law that Harleysville Lake has no duty, pursuant to the applicable insurance policy with Heartland Dairy, to provide Mrs. Hostetler underinsured motorist coverage as a result of the

---

[4] The cited provision is found within a table entitled "Description of Covered Auto Designation Symbols" and it provides, "Hire Auto Only – [o]nly those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent, or borrow from any of your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households." *See* Business Auto Coverage Form Section 1(A).

November 8, 2002 accident. Harleysville Lake's motion for summary judgment is denied.

The Hostetlers claim Mrs. Hostetler is entitled underinsured motorist coverage—based on Indiana law—because she is insured under the liability provisions of the policy. The Business Auto Coverage Form of Heartland Dairy's policy provides in relevant part:

> SECTION II – LIABILITY COVERAGE
> A. Coverage
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
> 1. Who Is An Insured
> > B. Anyone else while using with your permission a covered "auto" you own, hire or borrow.

For Mrs. Hostetler to be an insured under the policy as a matter of law, the summary judgment record before the court must demonstrate that Heartland Dairy either "hired" or "borrowed" the Hostetlers' car.[5]

---

[5] The Hostetlers also argue that Mrs. Hostetler is an "insured" under Section II A(1)(c): insured includes "[a]nyone liable for the conduct of an insured described above but only to the extent of that liability." Apparently the Hostetlers contend that because Heartland Dairy is an "insured" under the policy, and because Mrs. Hostetler is an agent of Heartland Dairy, Mrs. Hostetler could be liable for Heartland Dairy's wrongful conduct pursuant to an agency/principal relationship and so falls within the definition of an "insured." Without deciding whether Mrs. Hostetler is an agent of Heartland Diary, the court rejects this argument. A principal can be liable for an agent's wrongful acts under the doctrine of respondent superior. Infinity Products, Inc. v. Quandt, 810 N.E.2d 1028, 1034 (Ind. 2004) (respondeat superior is a common law doctrine under which liability is imposed by law upon the master for acts done by the servant, regardless of the master's complicity in the acts). Such derivative liability does not, though, flow in both directions. If a principal is negligent in its conduct, it does not mean that an innocent agent is liable simply because of his status as an

12

The Heartland Dairy policy doesn't define "borrow" or "hire," so the court must look to the word's ordinary meaning as it is applied to the facts of the case. American Family Life Assur. Co. v. Russell, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998). The term "borrower" in this context means one who has, with the owner's permission, temporary possession of the property for his own purposes. American States Ins. Co. v. Braden, 625 N.E.2d at 1257; Protective Ins. Co. v. Coca-Cola Bottling Co., 423 N.E.2d 656, 660 (Ind. App. 1981). Possession can be established by physical control, or if one doesn't have physical control, by the right to exercise dominion and control over the vehicle. American State Ins. Co. v. Braden, 625 N.E.2d at 1257.[6] Indiana courts haven't defined the term "hirer," but at least one

---

agent. For example, a principal who knows the unsuitability of an instrumentality he instructs an agent to employ in carrying out the principal's request can be liable for harm caused by the agent, but if that agent has no reason to know that the instrumentality which he uses is unsuitable, he is not liable for harm caused by the unsuitability. RESTATEMENT (SECOND) OF AGENCY, § 350.

Tippecanoe Loan and Trust Co. v. Jester, 101 N.E. 915 (Ind. 1913), the only case the Hostetlers cite for their argument, doesn't stand for the proposition that an agent can be liable for the conduct of a principal; rather, the court held that an agent's own wrongful conduct not only imputes liability on a principal because of the master/servant relationship, such conduct also gives rise to the agent's individual liability to third parties. Id at 920 ("An agent, like every other person, is bound, in the course of the discharge of his duty to the principal, to exercise a due regard for the rights and privileges of others. If he fails in this duty, and by his willful act, or by his negligent conduct, inflicts an injury upon a third person, he is liable to that person in the same manner as though he were not an agent"). Because Mrs. Hostetler, as an agent for Heartland Dairy, could not be liable for its conduct, she is not an insured under Section II A(1)(c).

[6] Indiana courts determining the scope of hired/borrowed automobile clauses have found that the issue of whether an automobile has been borrowed turns on the degree of control. For example, in Protective Ins. Co. v. Coco-Cola, James Hanners was killed while delivering a Coca Cola trailer pursuant to a hauling contract between Cox Motor Transport, Inc. and Coca Cola. An accident occurred during the unloading of the trailer and Mr. Hanners' estate brought a wrongful death action. Coca Cola sought a declaration that it was an additional insured under the policy between Protective Insurance and Cox Motor. The court found the fact that a Coca Cola dispatcher instructed the driver of the truck where to park was evidence of control, but standing alone, was insufficient to make the company a borrower as a matter of law.

13

other court dealing with a hired/borrowed clause in this context looked to matters of control to determine if an auto has been hired. U.S. Fidelity & Guar. v. Heritage Mut. Ins., 230 F.3d 331, 334-335 (7th Cir. 2000) (applying Indiana law). Given that Mrs. Hostetler can be an insured within the meaning of the policy if she was using a covered auto which was either hired or borrowed, the court considers both scenarios.

Whether Mr. Hostetler's car was borrowed turns on Heartland Dairy's right to exercise control over the vehicle. Despite agreement about the basic arrangement of the trip, the summary judgment record presents several factual disputes concerning the degree of control Heartland Dairy could exercise over Mr. Hostetler's vehicle during the course of the trip. For example, Mr. Hostetler claims Heartland Diary was in control of all aspects of the trip; Mr. Swanson claims that he didn't specify the route of travel, how the Hostetlers used their time, or even when the trip ended. Mr. Swanson says it was his understanding that the Hostetlers were taking a "mini vacation" and would be traveling to visit family friends during the trip, but that he did not know where these people lived or when

---

A contrary line of cases have interpreted the hired/borrowed automobile clause in insurance policies to mean that borrowing a vehicle would include receiving benefit of its use, without the necessity of having possession, dominion or control. See Travelers Indemnity Company v. Swearinger, 169 Cal. App. 3d 779, 784-788 (Cal. Ct. App. 1985); Caston v. Buckeye Union Ins. Co., 456 N.E.2d 1270, 1271-1272 (Ohio Ct. App. 1982). This line of cases is unpersuasive because such an interpretation is not in accordance with the ordinary meaning of the term "borrow." For example, when a person uses his car to pick up medicine for a sick friend, the bedridden friend never has possession nor does he exercise control over his friend's car, and even though the sick friend may receive a significant benefit, few people would say that he has borrowed the car used for the errand. See Schroder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 346 (La. 1991).

the Hostetlers would be visiting them. The Hostetlers claim that the trip was done solely as part of Heartland Dairy's business and not for personal reasons. The parties dispute whether Heartland Dairy instructed Mr. Hostetler to visit the E-zee Milking Equipment dealership as part of the trip.

The employee/employer relationship between Mr. Hostetler and Heartland Dairy is some indication of control, but because of the numerous factual disparities about where, when and how Mr. Hostetler was to conduct the trip, whether Heartland Dairy could exercise the requisite amount of control remains in genuine issue, and the court cannot say as a matter of law that Heartland Dairy borrowed the Hostetlers' car.

The meaning of the term "hire" within this context isn't settled. *See* Fidelity & Guar. v. Heritage Mut. Ins., 230 F.3d 331 at 334-335. The court is persuaded by the Fifth Circuit's position that a vehicle is "hired" only when the parties enter into a separate agreement by which the vehicle is hired to the named insured for his exclusive use or control. *See* Toops v. Gulf Coast Marine Inc., 72 F.3d 483, 487 (5th Cir. 1996). To hold otherwise would ignore the distinction between hiring a person's services and hiring the vehicle used to complete those services. This distinction is apparent in the context of the employee/employer relationship. When an employee, such as Mr. Hostetler, is hired to travel on behalf of his employer's business interest, that employer has agreed to compensate the employee because the employer believes he or she will sufficiently represent its

interest, not because of the vehicle the employee plans to use. Such an interpretation is consistent with Indiana law. Since there was not a separate contract that gave Heartland Dairy exclusive control over the vehicle, Heartland Dairy did not "hire" Mr. Hostetler's car within the ordinary meaning of the term.

Unable to say that Heartland Dairy borrowed or hired Mr. Hostetler's car, the court cannot declare that as a matter of law, Mrs. Hostetler is entitled to underinsured motorist coverage as an insured of Heartland Dairy's policy with Harleysville Lake.  As such, the Hostetlers' motion is denied.

For the reasons stated above, the Court DENIES the defendants's motion for summary judgment [Docket No. 35] and DENIES the plaintiff's cross motion for summary judgment [Docket No. 37].

SO ORDERED.

Entered:   February 13, 2006

  /s/ Robert L. Miller, Jr.  
Chief Judge
United States District Court